**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| **JAVON JONES** | : |
| **247 Hickory Hollow Terrace** | : |
| **Antioch, Tennessee 37013** | : |
| | : |
| | : **Case No.** |
| **Plaintiff,** | : |
| | : |
| | : **JURY DEMAND** |
| | : |
| **v.** | : |
| | : |
| **UNITED HEALTH GROUP** | : |
| **800 Oak Street** | : |
| **Frederick, Maryland 21703** | : |
| **SERVE:** | : |
| **David S. Wichmann** | : |
| **Chief Executive Officer** | : |
| **9900 Bren Road East** | : |
| **Minnetonka, Minnesota 55343** | : |
| | : |
| **Defendant.** | : |
| | : |

_____

## <u>COMPLAINT</u>

Plaintiff, Javon S. Jones, by and through her attorneys, Corlie McCormick Jr., Esq.

and the McCormick Law Firm, LLC files this Complaint and hereby alleges and states:

### <u>Nature of this Action</u>

1. This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§2000e, et. seq.

2. This action is brought by the plaintiff, Javon S. Jones due to a hostile work environment based on her race (African American), employment discrimination and

1

constructive discharge based on her race (African American), and retaliation for engaging in a protected activity. The discrimination and retaliation alleged herein was perpetrated against the Plaintiff by Defendant, United Health Group, in violation of federal law. Plaintiff seeks declaratory relief, back pay, front pay, compensatory and general damages, punitive damages, reasonable attorney's fees, costs and expenses of this action, and such other and further relief as law and justice allow.

## Jurisdiction and Venue

3. This Court has jurisdiction under 28 U.S.C. §1331, and 28 U.S.C. §1343.

4. Venue is proper in this District under 28 U.S.C. §1391.

## Parties

5. Plaintiff, Javon S. Jones is an African American, adult, American citizen of Antioch, Tennessee, residing at 247 Hickory Hollow Terrace, Antioch, Tennessee 37013. At all relevant times, Plaintiff resided in Maryland and was employed by Defendant, United Health Group.

6. Defendant, United Health Group is a healthcare company headquartered in the United States. United Health Group employs more than fifteen ("15") persons and has offices throughout the United States, including an office located at 800 Oak Street, Frederick, Maryland 21703.

**Exhaustion of Administrative Remedies**

7. All applicable administrative and procedural prerequisites have been satisfied. Plaintiff filed timely charges with the Equal Employment Opportunity Commission ("EEOC"). On August 22, 2017, the EEOC's Indianapolis, Indiana District Office issued a Notice of Right to sue. Plaintiff received the notice at her address in Antioch, Tennessee on August 30, 2017. This Complaint is filed within 90 days of the receipt of the Notice of Right to Sue.

**Facts Common to All Counts**

8. Plaintiff was hired by Defendant on October 6, 2014 as a Healthcare Economics Consultant.

9. During the relevant period, Plaintiff lived in Columbia, Maryland, which is approximately one hour drive from Defendant's Frederick, Maryland offices.

10. From Plaintiff's hire until on or around February 10, 2016, Plaintiff received no complaints regarding her work performance.

11. Plaintiff ordinarily worked from home one day each week and planned to work from home on February 11, 2016 in order to catch a flight after work.

12. On February 10, 2016 at 8:11am, Defendant, through Coy Page, issued an e-mail addressing the inclement weather conditions in the region. Mr. Page explained that, although the Franklin, Tennessee offices would remain open, employees were asked to "please work from home or take a day of PTO…[i]f you are not able to safely commute to the office." Inclement weather conditions also existed in Frederick, Maryland on that date, including below freezing temperatures and icy roads due to

light snow and rain the previous day. Plaintiff worked from home on that date because of the inclement weather.

13. Plaintiff's supervisor, Robin Robertson, contacted Plaintiff on February 10, 2016 at 1:19pm explaining that because Plaintiff worked from home on February 10, 2016, in accordance with Defendant's "Flex Work From Home" policy, "it will be expected that [Plaintiff] come to the office tomorrow." When Plaintiff explained that she had already made arrangements to work from home on February 11, 2016 so that she could catch a flight from BWI Airport, Ms. Robertson asked Plaintiff to come into the office for part of the day, though the office is approximately an hour from the airport, and Plaintiff had already arranged to work from home. On information and belief, Caucasian employees would not have been asked to come in to the office for part of the day under such circumstances.

14. On February 10, 2016 at 2:00pm and 2:30pm, Plaintiff asserted that Defendant had applied its "Flex Work From Home" policy in a discriminatory manner and that Caucasian employees were treated more favorably than African American employees. Plaintiff provided an example using "Laura" and "Susan." Laura, a Caucasian employee was permitted work from home or leave work early on numerous occasions and make up time she missed, while Defendant removed Susan's work from home privileges when she suffered an illness. Defendant intensified its discrimination and retaliation against Plaintiff almost immediately after Plaintiff's February 10, 2016 report of discrimination.

15. On February 11, 2016, Plaintiff was asked to provide a status update on a ticket she

was assigned on December 22, 2015. Ms. Robertson revealed that she believed Plaintiff failed to take appropriate action on this ticket. This issue was not addressed prior to Plaintiff's February 10, 2016 complaint about discrimination.

16. On February 16, 2016, Plaintiff's supervisors, Robin Christman and Robin Robertson conducted an annual review with Plaintiff where they explained that Plaintiff had been using the internet and her personal phone too often at work. This issue was not raised with Plaintiff prior to her complaint about discrimination.

17. On February 21, 2016, despite issues raised on February 10 and February 16, 2016, Defendant rated Plaintiff as "effective" and concluded that Plaintiff was "meeting the expectations of the business analyst role," which Plaintiff would be "moving into."

18. Ms. Robertson raised additional complaints regarding Plaintiff's complaint processing on February 23, 2016, and on February 25, 2016, regarding the amount of time that Plaintiff spent away from her desk, though Ms. Robertson was aware of Plaintiff's medical condition which required her to take extended periods from her desk on occasion. In any event, Ms. Robertson only raised these matters after Plaintiff's February 10, 2016 complaint of discrimination, and Ms. Robertson did not raise such complaints against Caucasian employees for similar conduct.

19. On March 16, 2016, Ms. Robertson issued a corrective action form to Plaintiff and an "initial" warning based on Plaintiff's "job performance." The corrective action plan ("CAP") was to occur over a 30-day period. The corrective action was wholly based on communications which occurred beginning February 10, 2016, the date of

Plaintiff's first complaint of discriminatory treatment.

20. Employees under corrective action are forbidden from applying for, or accepting internal job offers. Thus, Plaintiff was prohibited from pursuing an internal business analyst job vacancy for which she had previously applied. Per Defendant's policy, Plaintiff had previously notified Ms. Robertson that she applied for an internal position.

21. On March 16, 2016, Plaintiff filed an internal complaint with Defendant explaining that Caucasian employees are not held to the same standard as Plaintiff, and that Caucasian employees take cigarette breaks, lunch breaks and other extended breaks, use the internet and cell phones excessively, and engage in personal conversations on a daily basis. This complaint was also memorialized in writing on March 24, 2016.

22. In Plaintiff's written complaint she further explained that she reported to her supervisors Robin Robertson and Robin Christman, that Caucasian employees had been taking extended breaks, using internet and cell phones excessively, and engaging in personal, distracting personal conversations on a daily basis, but were not placed on a CAP for doing so. Ms. Christman and Ms. Robertson's response was simply that "we can't watch everybody."

23. Plaintiff also filed a complaint of discrimination with the EEOC on or around March 16, 2016.

24. Defendant's retaliation and discrimination against Plaintiff intensified after her March 16, 2016 reports of discrimination.

25. On March 23, 2016, Ms. Robertson informed Plaintiff that she would be required to work on a project with Data Analyst "D.U." Ms. Robertson made this decision though she was aware that Plaintiff had lodged internal reports of sexual harassment against Mr. U. in July 2015. Prior to Ms. Robertson's March 23, 2016 decision, Defendant had promised Plaintiff that she would not be required to work with Mr. U. again.

26. On March 28, 2016, Plaintiff clarified that she understood that Defendant would not require her to work with Mr. U.

27. On April 4, 2016, Ms. Robertson met with Plaintiff and asserted that Plaintiff would not ordinarily be assigned to work with Mr. U., "unless business needs arise where he is the only person available to work with." Under such circumstances, **Plaintiff "would have to**" work with Mr. U. (Emphasis added.) Defendant did not require Plaintiff to work with Mr. U. based on "business needs" prior to Plaintiff's reports of discrimination, and did not require Caucasian employees to work with persons whom they had reported for sexual harassment.

28. Ms. Robertson would not allow a peer representative to participate in Plaintiff's April 4, 2016 meeting "due to confidentiality," though Plaintiff could have an additional management employee in attendance, or a non-management team lead chosen by Defendant.

29. Ms. Robertson also noted in the April 4, 2016 meeting that although Plaintiff had "been doing what is asked of her on her projects," corrective action was warranted because of "lack of communication," with management, and because the volume

and tone of Plaintiff's voice when speaking with management, is "unacceptable and intimidating." Plaintiff's lack of communication, volume, and tone of voice were neither previously mentioned as issues to Plaintiff, nor included as "Corrective actions to be taken by Employee" on the March 16, 2016 corrective action form or in Plaintiff's Corrective Action Plan.

30. On April 5, 2016 and April 6, 2016, Plaintiff took leave from work and was unable to drive in due to a stress related medical condition aggravated *inter alia*, by Defendant's decision to force Plaintiff to work with Mr. U. if "business needs [arose]" despite Defendant's prior promises that Plaintiff would not have to work with Mr. U. at all, because of Mr. U's unwelcome behavior.

31. On April 19, 2016, Ms. Robertson ordered Plaintiff to meet with her in Defendant's conference room. During the meeting, Ms. Robertson informed Plaintiff that Human Resources had received "a complaint" that Plaintiff had been tracking breaks, and lunches of other employees and that Plaintiff should stop. Plaintiff had been tracking her colleagues time to support her internal complaint of unfair and discriminatory treatment. Plaintiff reiterated that she believed that she was being targeted because of her race, and that Caucasian employees were not disciplined for excessive internet usage, lengthy breaks, or excessive personal calls.

32. On April 19, 2016 and April 20, 2016, Plaintiff contacted Julie Fletcher in Human Resources regarding Plaintiff's April 19, 2016 meeting with Robin Robertson. On April 19, 2016, Ms. Fletcher asserted that Plaintiff's tracking other employees' time was "inappropriate" but that Plaintiff properly reported the "inconsistencies" in time

tracking in prior complaints, and that the matter was being "researched."

33. On April 19, 2016, Ms. Fletcher was unsure how the inconsistent tracking of employee time issue was related to Plaintiff's complaint of discrimination and asked Plaintiff to explain. In response, Plaintiff asserted that Ms. Robertson does not closely track Caucasian employees' time but does closely monitor Plaintiff's time.

34. On April 20, 2016, Ms. Fletcher responded that Plaintiff's allegations had "already been disproven," that Plaintiff's complaints of being targeted were "without merit," and that Plaintiff is not privy to actions taken against other employees, though Ms. Fletcher had admitted that Plaintiff appropriately reported the issue, and that the matter was being "researched," just one day earlier.

35. On April 25, 2016, Coy Page concluded that the CAP was issued to Plaintiff "solely related to performance-based outcomes." Mr. Page "found no evidence that the CAP was racially motivated," and concluded that the internet and cell phone use policy were "applied consistently throughout the department."

36. On May 4, 2016 Plaintiff submitted a "notice to quit" to Robin Robertson and Coy Page, where she informed Defendant that she would be separating from employment and that her final date of employment would be May 27, 2016.

37. Defendant required Plaintiff to return her laptop on May 4, 2016 and paid Plaintiff through May 19, 2016, rather than May 27, 2016.

## Causes of Action

### COUNT I: RACE BASED DISCRIMINATION IN VIOLATION OF 42 USC§2000e, et. seq.
### (Constructive Discharge)

38. Plaintiff incorporates by reference and re-alleges each and every averment in all prior paragraphs of this Complaint with the same force and vigor as if fully set forth herein.

39. Plaintiff's performance was satisfactory and Plaintiff had "been doing all that was asked" on her projects but Defendant selectively implemented a CAP for Plaintiff because of Plaintiff's African American race and in retaliation for Plaintiff's complaints of discrimination. Defendant's stated reasons for corrective action included Plaintiff's alleged excessive internet and phone usage, and lengthy breaks from her workstation. Caucasian employees, who excessively used the internet, engaged in long personal conversations, took lengthy cigarette, lunch, and other breaks, and excessively used their personal phones were not disciplined or placed on corrective action plans, and Caucasian employees engaged in such behavior on a daily basis. Plaintiff was told that she acted inappropriately when Plaintiff obtained proof that Caucasian employees routinely engaged in behavior for which Plaintiff had been disciplined. Defendant informed Plaintiff that she would be required to work with an employee against whom Plaintiff had previously reported for sexual harassment and whom Defendant previously agreed to keep separate from Plaintiff.

40. As a result of the acts described herein, Plaintiff has suffered loss of pay and

benefits, including retirement benefits, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, aggravation of her medical conditions, and other pecuniary and non-pecuniary losses.

41. Defendant's actions described herein constitute race based discrimination and constructive discharge in violation of 42 USC§2000e, et. seq. Defendant intentionally discriminated against Plaintiff because of her race as an African American and deliberately made Plaintiff's work conditions so intolerable that any reasonable employee would quit. Defendant's actions constitute intentional, willful, malicious, and flagrant violations of the Plaintiff's rights and a wanton disregard for Plaintiff's well-being and welfare, as to warrant compensatory damages, punitive damages, back pay, front pay, attorneys' fees, expenses, costs, and such other and further relief as the Court deems just.

## COUNT II: RACE BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 USC§2000e, et. seq.

42. Plaintiff incorporates by reference and re-alleges each and every averment in all prior paragraphs of this Complaint with the same force and vigor as if fully set forth herein.

43. Plaintiff's performance was satisfactory and Plaintiff had "been doing all that was asked" on her projects but Defendant selectively implemented a corrective action plan for Plaintiff because of her race and in retaliation for Plaintiff's complaints of discrimination. Defendant's stated reasons for corrective action included excessive internet and phone usage, and lengthy breaks from her workstation. Caucasian

11

employees, who excessively used the internet, engaged in long personal conversations, took lengthy cigarette, lunch, and other breaks, and excessively used their personal phones were not disciplined or placed on corrective action plans and Caucasian employees engaged in such behavior on a daily basis. Plaintiff was told that she acted inappropriately when Plaintiff obtained proof that Caucasian employees routinely engaged in behavior for which Plaintiff had been disciplined. Defendant informed Plaintiff that she would be required to work with an employee against whom Plaintiff had previously reported for sexual harassment and whom Defendant previously agreed to keep separate from Plaintiff.

44. As a result of the acts described herein, Plaintiff has suffered loss of pay and benefits, including retirement benefits, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

45. Defendant's employees' actions described herein are imputable to Defendant, and constitute a hostile work environment based on Plaintiff's African American race in violation of 42 USC§2000e, et. seq. These acts were unwelcome and committed by Defendant because of Plaintiff is African American and Plaintiff would have been treated differently if she were Caucasian. The acts committed occurred with such frequency, and were so severe and pervasive, that it created a hostile work environment. Defendant's actions constitute intentional, willful, malicious, and flagrant violations of the Plaintiff's rights and a wanton disregard for Plaintiff's well-being and welfare, as to warrant compensatory damages, punitive damages,

back pay, front pay, attorneys' fees, expenses, costs, and such other and further relief as the Court deems just.

**COUNT III: RETALIATION IN VIOLATION OF 42 USC§2000e, et. seq.**

46. Plaintiff incorporates by reference and re-alleges each and every averment in all prior paragraphs of this Complaint with the same force and vigor as if fully set forth herein.

47. Plaintiff's performance was satisfactory and Plaintiff had "been doing all that was asked" on her projects but Defendant selectively implemented a CAP for Plaintiff in retaliation for Plaintiff's complaints of discrimination. Defendant's stated reasons for the corrective action plan included excessive internet and phone usage, and lengthy breaks from her workstation. Caucasian employees, who excessively used the internet, engaged in long personal conversations, took lengthy cigarette, lunch, and other breaks, and excessively used their personal phones were not disciplined or placed on corrective action plans and Caucasian employees engaged in such behavior on a daily basis. Plaintiff was told that she acted inappropriately when Plaintiff obtained proof that Caucasian employees routinely engaged in behavior for which Plaintiff had been disciplined. Defendant informed Plaintiff that she would be required to work with an employee whom Plaintiff had previously filed a report of sexual harassment and whom Defendant previously agreed to keep separate from Plaintiff. Defendant engaged in the above stated actions in violation of their policies, all in retaliation for Plaintiff's complaints of race based discrimination.

48. As a result of the acts described herein, Plaintiff has suffered loss of pay and benefits, including retirement benefits, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

49. Defendant's actions described herein constitute illegal retaliation because Plaintiff reported race based discrimination made unlawful by 42 USC§2000e, et. seq. Defendant committed the acts because Plaintiff reported unlawful discrimination and Plaintiff would have been treated differently if she had not reported Defendant's discriminatory practices. Defendant's retaliatory actions constitute intentional, willful, malicious, and flagrant violations of the Plaintiff's rights and a wanton disregard for Plaintiff's well-being and welfare, as to warrant compensatory damages, punitive damages, back pay, front pay, attorneys' fees, expenses, costs, and such other and further relief as the Court deems just.

**WHEREFORE**, Plaintiff respectfully requests the following:

1. An order finding and declaring that Defendant intentionally discriminated and retaliated against Plaintiff;

2. All wages and benefits that Plaintiff would have received but for Defendant's discrimination and retaliation, including pre-judgment interest;

3. Front pay;

4. Compensatory and general damages according to proof, including, but not limited to pain and suffering arising from the humiliation, embarrassment, and

anguish Plaintiff was put through, including costs for medical/health care treatment because of Defendant's discriminatory conduct and retaliation;

5. Punitive damages according to proof;

6. Reasonable attorneys' fees and costs of this action;

7. Such other relief as the Court may deem just and proper.

Dated: November 25, 2017    Respectfully submitted,

**McCormick Law Firm, LLC**

_____/s/_____

Corlie McCormick Jr.
McCormick Law Firm, LLC
1125 West Street, Ste 200
Annapolis, Maryland 21401
(410)216-3424
Corlie@McCormickFirm4Justice.com
Fed. Bar No. 28143
Counsel for Plaintiff

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all issues so triable.